IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LENNARD AMICK HARRIS,**

    Plaintiff,

v.                                                                    Civil Action No. **3:20CV267**

**OFFICER LOTTE,** *et al.,*

    Defendants.

**MEMORANDUM OPINION**

Lennard Amick Harris, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Harris's Particularized Complaint ("Complaint," ECF No. 13).[2] Harris primarily contends that Defendants failed to provide adequate protection against the possibility of infection with the Coronavirus Disease 2019 ("Coronavirus") while incarcerated in the Rappahannock Regional Jail ("RRJ"). Harris names as defendants: Officer Lotte, Officer Guzman, and Lieutenant Colonel Kevin L. Hudson.[3] The matter is before

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Harris's submissions.

[3] By Memorandum Opinion and Order entered on April 20, 2021, the Court dismissed all claims against Defendant Lotte because Harris failed to serve him in a timely manner. (ECF Nos. 28, 29.)

the Court on the Motion to Dismiss filed by Officer Guzman and Colonel Hudson. (ECF No. 21.) For the reasons set forth below, the Motion to Dismiss (ECF No. 21) will be GRANTED.

## I. STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *aff'd*, 36 F.3d 1091 (4th Cir. 1994)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable," *id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PERTINENT ALLEGATIONS AND CLAIMS

In 2020, Harris was confined in the Rappahannock Regional Jail ("RRJ") as a convicted felon. (Compl. 8.) On March 18, 2020, Colonel Hudson wrote a memorandum to the staff and inmates at RRJ "that Covid-19 was [a] dangerous and deadly, highly contagious disease." (*Id.* at 2.) Colonel Hudson directed that all surfaces should be regularly cleaned. (*Id.* at 2–3.) Nevertheless, Colonel Hudson did not enforce this directive and cleaning remained mediocre. (*Id.* at 3.)

3

In April of 2020, Harris was housed in a small cell with two other inmates. (*Id.*) Harris "wrapped a T-shirt around his nose and mouth to protect himself from the danger of contracting Covid-19." (*Id.* at 4.) Officer Guzman directed Harris to remove the T-shirt. (*Id.* at 5.) Harris explained the need to wear a face covering. (*Id.*) When Harris refused to remove the T-shirt, Harris was locked down in cell A3-08 for 24 hours. (*Id.*) The cell had urine-stained walls, dirty toilets and sinks, and a stained mattress. (*Id.*) Harris sent numerous grievance forms to Colonel Hudson complaining about his punishment and the unsanitary conditions of the lock down cell. (*Id.* at 6.)

Harris was released from RRJ at the end of February 2021. (ECF No. 25.) There is no indication that Harris contracted the coronavirus while incarcerated in RRJ. (Compl. 9.)

Based on the foregoing allegations, the Court construes Harris to raise the following claims for relief:

> Claim One: Defendants violated Harris's Eighth Amendment[4] rights because they failed to take adequate precautions against the Coronavirus.
>
> Claim Two: Defendants violated Harris's Eighth Amendment rights when they locked him down in cell A3-08 for wearing a face covering.
>
> Claim Three: Defendants violated Harris's right to due process when they locked him down in cell A3-08.

Harris demands monetary damages and injunctive relief.

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

## III. ANALYSIS

### A. Mootness

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there. *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Here, Harris has been released from RRJ. Accordingly, his demands for injunctive relief will be DISMISSED AS MOOT.

### B. Alleged Eighth Amendment Violations

To state an Eighth Amendment claim, an inmate must allege facts showing "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing

5

of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### 1. Claim One

Claim One fails at the outset because Harris fails to satisfy the objective prong for an Eighth Amendment claim. While Harris contends that Defendants failed to take adequate measures to protect against the spread of the Coronavirus in RRJ, he fails "allege 'a serious or significant physical or emotional injury resulting from'" this lapse. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). Accordingly, Claim One will be DISMISSED.

6

### 2. Claim Two

Claim Two suffers from a similar defect. Harris contends that he was locked a dirty cell for 24 hours. Harris does not describe the level of consistent and prolonged exposure to unsanitary conditions necessary for a constitutional violation. *See Robinson v. Weisenburger*, No. 7:14CV00114, 2015 WL 5023745, at *5–7 (W.D. Va. Aug. 25, 2015) *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004); *see also Shannon v. Graves*, 257 F.3d 1164, 1169 (10th Cir. 2001). Additionally, Harris does not plausibly "allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta*, 330 F.3d at 634 (quoting *Strickler*, 989 F.2d at 1381). Accordingly, Claim Two will be DISMISSED.

### 3. Claim Three

In Claim Three, Harris contends that Defendants failed to provide him with sufficient process prior to placing him in the lock down cell for 24 hours. As explained below, Harris does not enjoy a protected liberty interest in avoiding a brief placement in the lock down cell.

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005). As explained below, Harris fails to allege facts that suggest that Defendants' action in placing him in lockdown cell affected any protected liberty interest.

### (a) The Constitution Fails to Confer a Liberty Interest in Avoiding Placement in a Lockdown Cell for 24 Hours

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Thus, the Constitution itself does not give rise to a liberty interest in avoiding a brief placement in a lockdown cell. *See id.*; *Berryman v. Mullen*, No. 1:16CV47, 2017 WL 3531098, at *6 (N.D. W. Va. Aug. 17, 2017) (concluding that inmate did not enjoy a liberty interest in avoiding placement "in a 'strip cell' for 11 days without his own clothing, hygiene products, or other personal property").

### (b) Harris Fails to Demonstrate the Existence of a State-Created Liberty Interest in Avoiding Placement in a Lock Down Cell

Demonstrating the existence of a state-created liberty interest, requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487 (1995); *see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "grants its inmates . . . a protected

liberty interest in remaining free from that restraint." *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).

With respect to the *Sandin* threshold analysis, the Court must first "determine what the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular inmate*?" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (citing *Prieto*, 780 F.3d at 253). Second, "with the baseline established, [the Court] determine[s] whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*, 780 F.3d at 254). The United States Court of Appeals for the Fourth Circuit has observed that "[a]lthough the general prison population is not the relevant atypicality baseline in all cases, it is the touchstone in cases where the inmate asserting a liberty interest was [initially] sentenced to confinement in the general population and later transferred to security detention." *Id.* at 528–29 (citing *Prieto*, 780 F.3d at 252). Nonetheless, "[t]he mere limitations on privileges, property, and activities for administratively segregated inmates 'fall[ ] within the expected perimeters of the sentence imposed by a court of law.'" *Hubbert v. Washington*, No. 7:14–cv–00530, 2017 WL 1091943, at *5 (W.D. Va. Mar. 22, 2017) (alteration in original) (quoting *Sandin*, 515 U.S. at 485).

*Sandin* itself forecloses the notion that all forms of punitive or administrative segregation presumptively constitute an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court rejected Conner's claim that he enjoyed a liberty interest in avoiding confinement in punitive segregation for thirty (30) days. *Id.* at 487. The dissent observed:

> In the absence of the punishment, Conner, like other inmates in [the] general prison population would have left his cell and worked, taken classes, or mingled with others for eight *hours* each day. As a result of disciplinary segregation, however, Conner, for 30 days, had to spend his entire time alone in his cell (with the exception of 50 *minutes* each day on average for brief exercise and shower periods, during

9

>which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains).

*Id.* at 494 (Breyer, J., dissenting) (citations omitted). However, the majority concluded that the foregoing conditions "did not present the type of atypical, significant deprivation in which a State might *conceivably* create a liberty interest." *Sandin*, 515 U.S. at 486 (emphasis added).

In assessing whether deprivation constitutes an atypical and significant deprivation the Supreme Court has focused on the "(1) the magnitude of confinement restrictions; (2) whether the administrative segregation [or other restrictive confinement] is for an indefinite period; and (3) whether assignment to administrative segregation [or other restrictive confinement] had any collateral consequences on the inmate's sentence." *Incumaa*, 791 F.3d at 530. Here, there are no allegations that Harris's placement in the lock down cell had any collateral consequence upon his sentence. The placement was not for an indefinite period but lasted only 24 hours. Thus, the second and third factors do not suggest that Harris had a protected liberty interest in avoiding placement in a lock down cell. Furthermore, with respect to the relative magnitude of the confinement restrictions, Harris has supplied no facts as to what life was like in the general prison population relative to the lock down cell.

Harris has failed to allege that the conditions he experienced during placement in the lock down cell were harsher than the conditions described in *Sandin* such that a State might conceivably intend to create a liberty interest in avoiding the conditions. Accordingly, Harris fails to demonstrate that his placement in a lock down cell constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Beverati*, 120 F.3d at 504;[5] *cf. Incumaa*,

---

[5] In *Beverati*, the Fourth Circuit found that the inmate plaintiffs did not enjoy a liberty interest in avoiding a six-month stay in administrative segregation where they described the conditions as follows:

791 F.3d at 530–32 (concluding solitary confinement for twenty years involved onerous, severely restrictive conditions and constituted an atypical and significant hardship). Accordingly, Claim Three will be DISMISSED.

## IV. CONCLUSION

The Motion to Dismiss (ECF No. 21) will be GRANTED. Harris's claims will be DISMISSED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 26 May 2021
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge

---

They claim that when they were initially placed in segregation, their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, they assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

*Beverati*, 120 F.3d at 504. The Fourth Circuit concluded that "although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.*

11